# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| WILLIAM HOUSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-CV-04191-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Plaintiff William Houston's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. [Doc. 8]. For the following reasons, the Commissioner's decision is affirmed.

**I.   Background**

Houston was born in 1966 and has some college education.  He alleges he became disabled on June 8, 2009.  When he filed for disability benefits in July 2011, he alleged disability from the combined effects of gastroesophageal reflux disease, arthritis in his hips, shoulders, and knees, depression, stomach ulcers, heart palpitations, and high stroke risk. [Tr. 207].  At a hearing in January 2013, Houston also alleged debilitating back pain which began in late 2010 and which was worse than his knee pain.  [Tr. 46, 49].

**A.  Medical History**

Because Houston does not challenge the ALJ's conclusions related to his mental impairments, the Court will focus on the medical history related to Houston's physical impairments.[1] Houston worked as a mall security officer until June 8, 2009, the day of his alleged onset of disability. Houston testified that he quit his job because he was having issues with coworkers, was required to work extra hours, and often had to do both his job and that of his subordinates. [Tr. 40-41]. He testified that his foot patrol duties added stress to his knee and that his paperwork duties were mentally stressful. [Tr. 41]. He stated he was "physically and mentally burned out" and could no longer handle the burden of the job. [Tr. 41-42]. He suffered depression from being reprimanded by his supervisors and was stressed because he was away from his family. [Tr. 42-43].

Houston's primary physical complaints are related to knee pain and back pain. In August 2010, Houston sought treatment for bilateral knee pain. [Tr. 278]. An MRI of left knee revealed a complex grade tear of the posterior horn of the medial meniscus, a grade 1 signal in the posterior horn of the lateral meniscus without any tear, and minimal soft tissue edema anterior to the patellar tendon. [Tr. 277]. An MRI of the right knee revealed changes in the lateral patellofemoral joint, suggestive of lateral femoral condyle friction syndrome, a small grade 3 tear in the posterior horn of medial meniscus, and a chronic tear of the femoral attachment of the anterior cruciate ligament. *Id.* Houston was diagnosed with a right knee chronic anterior cruciate ligament tear, a medial meniscal tear, and patellofemoral degenerative changes. *Id.* The left knee had a medial meniscal tear. *Id.* Houston's doctors opined that knee surgery was the best treatment option for

---

[1] Portions of the Parties' briefs are adopted without quotation.

him, but his surgery was cancelled due to uncontrolled hypertension and EKG changes. [Tr. 270, 300-01]. Houston returned to a cardiology clinic on multiple occasions in September and October 2010 for follow-up appointments regarding hypertension, but was not cleared for surgery. [Tr. 289, 291, 298].

In November 2010, Houston complained of back pain and a headache. [Tr. 358]. Houston's back was tense and tender on the left lower thorax. He was diagnosed with thoracic back pain, neck pain, and a headache and prescribed medication. *Id.* In July 2011, Houston complained of chest, shoulder, and knee pain and headaches. [Tr. 333-37]. Houston told his doctor that he stopped taking his blood pressure medication because it was causing side effects and that he was still not cleared for knee surgery. [Tr. 356]. He was diagnosed with uncontrolled hypertension, anxiety, obesity, and bilateral knee pain. He was prescribed a new blood pressure medication. In late July 2011, Houston complained of shoulder and hip pain. Examination revealed decreased range of motion in the shoulders. Houston's doctor remarked that Houston's insurance would not pay for physical therapy for his shoulders and hips. [Tr. 354].

In August 2011, Houston complained of sleep apnea, anxiety, irritability, and pain in his lower back and left hip. [Tr. 352]. An x-ray of the left hip and lumbar spine revealed no abnormalities. [Tr. 520-21]. A sleep study revealed severe obstructive sleep apnea, and it was recommended that Houston use a CPAP machine while sleeping. In November 2012, Houston was diagnosed with lumbar foraminal stenosis with neurogenic claudication, chronic pain syndrome, lumbar facet syndrome, depression, and insomnia secondary to pain. [Tr. 586]. An MRI of the lumbar spine revealed mild to moderate

3

lumbar spondylosis. [Tr. 594]. Houston was prescribed a front-wheeled walker at his request. [Tr. 587].

In late November 2012, Houston's primary care physician, Dr. Sarah Yong, M.D., completed a Medical Source Statement-Physical. [Tr. 497-98]. Dr. Yong opined that Houston could frequently and occasionally lift and carry ten pounds, could stand or walk continuously for fifteen minutes for a total of two hours in an eight hour day, and could sit continuously for thirty minutes for a total of four hours in an eight hour day. [Tr. 497]. Houston was limited in his ability to push or pull ("he only does light housework"). [Tr. 497]. Houston could never crawl or climb ladders. He could occasionally climb stairs, balance, stoop, kneel, crouch, and reach. He could frequently handle/grip, finger, feel, see, speak, and hear. [Tr. 498]. He should avoid any exposure to extreme temperatures, weather, hazards, and heights. He should avoid moderate exposure to dust/fumes, wetness/humidity, and vibration. *Id.* Dr. Yong opined that Houston would need to lie down three times per day for one to two hours. She also stated that Houston's medication would cause a decrease in his persistence to finish a task and a decrease in his pace. *Id.*

In December 2012, Houston reported pain in his posterior thigh which was initiated by standing. [Tr. 575]. Houston also stated that once his pain has started, sitting down did not bring relief and at times made the pain worse. *Id.* Houston's hypertension was still uncontrolled. [Tr. 570]. Houston was diagnosed with hyperlipidemia, bilateral knee structural damage, L5-S1 lumbar foraminal stenosis with neurogenic claudication and lumbar spondylosis, and left hip mild osteoarthritis with pain on the left. [Tr. 573].

4

At his hearing in January 2013, Houston testified that he had been using a walker for the past eight weeks to help him balance and to relieve back pain. [Tr. 37-38]. He testified that his lower back caused him the most pain and that pain medication did not help. [Tr. 46-47]. He testified that bending down, standing for periods of longer than twenty minutes, and twisting caused the pain. [Tr. 47]. To relieve his back pain, sitting down sometimes relieved the pain and lying on his stomach was one of the best ways to relieve the pain. [Tr. 48]. His back pain started in late 2010, after he stopped working, and became "really noticeable" in the summer of 2013. [Tr. 51].

As to his knees, Houston testified that both knees hurt, but that the right knee hurt more. His right knee hurt while he was working, but his left knee started hurting after he stopped working. [Tr. 49-50]. Houston testified that his back pain is "far worse" than his knee pain. [Tr. 50]. He uses knee braces. [Tr. 51]. His knees hurts when he cleans, helps the children clean the living room, and when he climbs steps. *Id.* His knees are not bothered by being on his feet, standing, or walking. *Id.*

### B. ALJ's Decision

After a hearing, the ALJ concluded that Houston suffered from the following severe impairments: degenerative joint disease of the knees, arthritis, obstructive sleep apnea, obesity, and major depressive disorder. [Tr. 15]. The ALJ determined that Houston had the residual functional capacity (RFC) to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). [Tr. 17]. Houston could not be exposed to hazards such as dangerous machinery or unprotected heights. He could not climb ladders, ropes, or scaffolds. He could perform simple,

5

routine tasks and could have no more than occasional interaction with supervisors, co-workers, and the public. *Id.*

In making his conclusion, the ALJ relied on Houston's activities of daily living, the Adult Function Reports filled out by both Houston and his wife, Houston's failure to comply with treatment recommendations, and the medical records, which included various treatment notes and a Medical Source Statement-Physical completed by Houston's treating physician, Dr. Sarah Yong, M.D.  The ALJ stated that despite allegations of debilitating knee and back pain, Houston was able to take care of his three children, clean a three bedroom, two bathroom apartment, make simple meals on a daily basis, do laundry with the help of his children, go shopping approximately three times per week for groceries and other needs, go to church, attend his children's sporting events and other social activities, and coach his son's summer track team. [Tr. 16, 19]. The ALJ also remarked that Houston's doctors recommended physical therapy, but that Houston did not seek out treatment. [Tr. 19].  The ALJ gave Dr. Yong's opinion "partial weight" because she limited Houston's ability to sit to four hours a day and thirty minutes continuously when neither Houston nor his wife reported any limitation in his ability to sit. [Tr. 20]. The ALJ stated that Dr. Yong's sitting limitation was inconsistent with Houston's own testimony and the record as a whole.

At the hearing, a vocational expert testified that a person with the same age, education, work history, and RFC as Houston could perform jobs that exist in significant numbers in the national economy, including as a surveillance systems monitor, assembler

of small products, and microfilmer. [Tr. 64-65]. Based on this testimony, the ALJ concluded that Houston was not disabled. [Tr. 23].

## II. Discussion

Houston alleges the Commissioner's decision is not supported by substantial evidence because the Commissioner failed to give controlling weight to his treating physician, Dr. Yong, failed to provide a narrative statement linking the evidence in the record to the RFC, and improperly discounted Houston's credibility and subjective allegations of pain.

### A. Analysis of Treating Physician, Dr. Yong

Houston argues that the ALJ improperly discounted Dr. Yong's opinion regarding his ability to sit continuously for only thirty minutes and for a total of four hours in an eight hour day. Specifically, Houston argues the ALJ only cited to the Adult Function Reports filled out by him and his wife at the time of filing but failed to consider other statements by Houston to his doctors. "A treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). An ALJ may disregard or discount a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions. *Id.* In any case, the ALJ must provide good reasons for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2); *see also Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010).

The ALJ determined that Houston could perform sedentary work, which requires an ability to sit approximately six hours in an eight hour day. *See* SSR 83-10 (S.S.A. 1983). Houston's treating physician, Dr. Yong, opined in a Medical Source Statement that Houston was limited to sitting continuously for thirty minutes for a total of four hours and that Houston would need to lie down three times a day for a total of three to six hours in an eight hour day. [Tr. 498]. The ALJ gave several reasons why Dr. Yong's opinion was due "partial weight." The ALJ stated that neither Houston nor his wife reported any limitation in Houston's ability to sit when Houston filed for disability, that Houston reported to his doctor that sitting improved the pain, and that Houston's doctor observed that he did not appear uncomfortable at rest. [Tr. 18, 20]. These reasons are supported by the record. In Adult Function Reports filled out by Houston and his wife, "sitting" is not listed as a condition affected by his condition. [Tr. 232, 240]. At his hearing, Houston testified that sitting sometimes relieved his back pain. [Tr. 48]. In November 2012, Houston stated that the further he walks, the more pain and tingling in his back and legs he feels, but that "[i]f he sits down, the tingling will eventually improve." [Tr. 422]. Also in November 2012, a pain prevention doctor observed that Houston did "not appear to be uncomfortable at rest." [Tr. 423]. The ALJ also stated that allegations related to a sitting limitation were inconsistent with Houston's daily activities which included coaching his son's summer track team, cleaning a three bedroom apartment, shopping, and cooking daily for his family.

Houston argues that the ALJ's opinion is based on only partial evidence because one month after Houston stated that sitting sometimes relieved his pain, Houston told his

8

doctor that his back pain was initiated by standing and that once the pain started, "sitting down does not bring relief and at times has made the pain worse." [Tr. 575]. Houston also argues that while both he and his wife did not list "sitting" as a functional limitation, both he and his wife stated that he had to rest often and lie down. While this evidence may support a finding that Houston was limited in his ability to sit, substantial evidence, discussed above, supports the ALJ's decision to give only "partial weight" to Dr. Yong's opinion regarding the sitting limitation. *See Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) ("[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion."). The Court will not reverse the Commissioner "simply because some evidence may support the opposite conclusion." *Id.* Nor will it reverse "merely because substantial evidence would have supported an opposite decision." *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996). Further, Dr. Yong gave no explanation for the sitting limitation or for her opinion that Houston would need to lie down three to six hours in an eight hour day. Houston pointed to no evidence in the record other than the Medical Source Statement by Dr. Yong where any other doctor or treatment provider opined that Houston could not sit for more than four hours and needed to lie down for three to six hours a day. Houston did not point to any evidence within Dr. Yong's own records supporting this conclusion. *See id.* ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."). The ALJ's determination

9

that Houston could sit approximately six hours a day and his determination that Dr. Yong's opinion was due "partial weight" is supported by substantial evidence.

## B. Narrative Statement Linking Evidence to RFC

Houston also contends that even if the ALJ properly weighed Dr. Yong's opinion, the ALJ failed to explain the reasons for discrediting other limitations in Dr. Yong's opinion. Houston argues that the ALJ's RFC differs from Dr. Yong's opinion regarding limitations in manipulation, pushing, pulling, environmental factors, and the need to lie down, and that the ALJ failed to indicate how he considered these limitations or explain why they were discarded. The RFC assessment must be based on all of the relevant evidence in the record, including the claimant's medical history and records, the effects of treatment, activities of daily living, medical source statements, effects of symptoms, and lay opinions. SSR 96-8P (S.S.A. 1996); *Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The RFC is a medical question, and as a result, the ALJ must consider some supporting evidence from a medical professional. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The ALJ must set forth specifically the claimant's limitations and how those limitations impact the RFC. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

Contrary to Houston's contention, the ALJ's RFC determination is supported by medical evidence. The ALJ gave Dr. Yong's opinion "partial weight" but not "controlling weight" because of the sitting restriction. However, many of the ALJ's RFC findings are consistent with the limitations opined by Dr. Yong and support a finding that the ALJ relied on Dr. Yong's opinion, in part, to determine Houston could perform sedentary work. Sedentary work requires lifting no more than 10 pounds at a time and

10

occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. §§ 404.1567(a), 416.967(a).  A sedentary job usually involves sitting, but a person may have to walk or stand occasionally.  *Id.*  A person performing sedentary work can stand or walk no more than two hours in an eight hour day and sit approximately six hours.  SSR 83-10 (S.S.A. 1983).  Sedentary work entails no significant stooping, but requires good use of the hands and fingers for repetitive hand-finger actions.  *Id.*   In the Medical Source Statement, Dr. Yong stated that Houston could lift and carry ten pounds frequently.  [Tr. 497].  Houston could stand or walk for up to two hours.  *Id.*  He could occasionally climb stairs, stoop, kneel, and crouch, but never crawl. [Tr. 498].  He could frequently grip, finger, and feel.  *Id.*  Dr. Yong's opinion supports a sedentary RFC.

Houston also argues that the ALJ's RFC differs from Dr. Yong's opinion regarding environmental factors.  Dr. Yong opined that Houston should avoid any exposure to weather and extreme temperatures and hazards and heights.  [Tr. 498].  The RFC prohibits Houston from jobs that require exposure to hazards and heights.  There is no explanation from either the ALJ or Dr. Yong related to the weather and temperature restrictions, but Houston's testimony that he coaches his son's summer track team is inconsistent with a finding that he can never be subjected to the extreme temperature or weather.  *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) ("As a general rule, . . . an ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination."). Further, Houston does not explain how a weather restriction precludes him from performing sedentary work such as a surveillance systems monitor,

11

assembler of small products, or microfilmer. The only significant difference between Dr. Yong's opinion and the RFC is the sitting restriction and Houston's need to lie down for up to six hours a day. As discussed above in Part II.A., substantial evidence supports the ALJ's rejection of the degree of limitation related to sitting and lying down opined by Dr. Yong.

Houston also argues that the ALJ did not explain how other evidence in the record supported the RFC. However, the ALJ specifically discussed Houston's activities of daily living, which included taking care of his three children, cleaning a three bedroom apartment, making daily meals, doing laundry and dishes, vacuuming, shopping three times per week for at least an hour, going to church, sporting events, and social groups, coaching his son's track team, and visiting the library. [Tr. 16-17, 19]. The ALJ stated that Houston's reported activities support the conclusion that Houston could do work at the sedentary level. [Tr. 19]. Accordingly, the ALJ's determination that Houston could perform sedentary work is supported by Dr. Yong's opinion, with the Social Security Administration's definition of sedentary work, and with other substantial evidence in the record.

### C. Credibility Analysis

Houston argues that the ALJ's credibility analysis is based on a mischaracterization of the record and is therefore, not supported by substantial evidence. In determining that Houston's complaints of subjective pain were not entirely credible, the ALJ, among other considerations, stated that Houston's primary care physician and pain management doctor encouraged him to go to physical therapy, but that he had not

done so. While this is true, a review of the record reveals that Houston could not attend physical therapy because his insurance would not cover treatment. [Tr. 354]. Houston's inability to afford a recommended treatment option should not be construed as an unwillingness to follow treatment recommendations. Nonetheless, the ALJ relied on other evidence in the record to support his finding that Houston was not entirely credible. Aside from treatment noncompliance, the ALJ discussed Houston's activities of daily living, the Adult Function Reports, and the medical records, which were inconsistent with a finding that Houston needed to lie down for up to six hours per day.

While the record revealed a need for knee surgery, Houston testified that his knee pain was caused by bending, cleaning, and climbing stairs, but that standing and walking did not bother his knees. [Tr. 51]. As to his back, Houston testified that standing for longer than twenty minutes, twisting, and bending caused pain. [Tr. 47]. Houston's testimony regarding his knee and back supports a finding that Houston may be limited in his ability to do more exertional work, but it is consistent with a finding that Houston can do sedentary work. Further, Houston has pointed to no evidence in the record that supports a finding that sitting causes or exacerbates his knee and back pain. Houston told a doctor that once pain starts – presumably from bending, cleaning, twisting, or standing and walking for a prolonged period – sitting can make it worse. But a sedentary job usually involves sitting with only occasional standing and walking not to exceed two hours in an eight hour day, a time period consistent with Dr. Yong's opinion.

While the ALJ's reliance on Houston's noncompliance with treatment recommendations is not supported by substantial evidence, the ALJ relied on several

13

other factors in determining Houston's credibility. As discussed throughout this Order, the ALJ's reliance on those factors are supported by substantial evidence.

## III. Conclusion

For the reasons set forth above, the Commissioner's decision is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: March 9, 2015
Jefferson City, Missouri